**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CENTRAL RABBINICAL CONGRESS OF THE USA & CANADA;<br><br>AGUDATH ISRAEL OF AMERICA;<br><br>INTERNATIONAL BRIS ASSOCIATION;<br><br>RABBI SAMUEL BLUM;<br><br>RABBI AHARON LEIMAN; and<br><br>RABBI SHLOIME EICHENSTEIN,<br><br>   *Plaintiffs*,<br><br>v.<br><br>NEW YORK CITY DEPARTMENT OF HEALTH & MENTAL HYGIENE;<br><br>NEW YORK CITY BOARD OF HEALTH; and<br><br>DR. THOMAS FARLEY, in his official capacity as Commissioner of the New York City Department of Health & Mental Hygiene,<br><br>   *Defendants*. | No.: 12 CV 7590 (NRB)<br><br>**ECF CASE** |

## <u>COMPLAINT</u>

1. The ritual of *bris milah*, or circumcision, is one of the most basic, important, and widely practiced Jewish traditions.  For thousands of years, Jews have adhered to the religious commandment to circumcise every male child on the eighth day after his birth.

2. Defendants have adopted a new regulation that, if it goes into effect as scheduled on October 21, 2012, threatens this venerable and sacred ritual.  In particular, Defendants have intentionally targeted for unique burdens  a practice that is viewed in many Jewish circles as a

critical aspect of the *bris milah*, known as *metzitzah b'peh* ("MBP"), attempting to conscript the individuals who perform this religious procedure (known as "*mohelim*") into advocates for Defendants' ill-founded opposition to the practice.   In the absence of *any* definitive proof that MBP poses health risks of any kind, and in the face of a millenia-long track record for safety, the regulation would require the *mohelim* to transmit the Department's subjective opinion that MBP "should not be performed."   That opinion is based on limited study, inaccurate assumptions, and deficient data, all of which remain actively debated within medical and scientific communities.

3.    This lawsuit is a challenge to the constitutional validity of Defendants' novel—and, indeed, unprecedented—regulation, under the First Amendment to the United States Constitution and the Free Exercise Clause of the New York Constitution.  In particular, by forcing *mohelim* to transmit to parents an inherently subjective and value-laden judgment about whether to adhere to the religious dictate of MBP, the regulation violates the basic constitutional principle that the government cannot compel speech.  Under the Free Speech Clause of the First Amendment, the Department simply cannot force dissenting individuals to undermine the tenets of their faith and discourage compliance with religious law by transmitting Defendants' opinion.  Moreover, by singling out for unique burdens a practice that is motivated exclusively by religious belief, and requiring its practitioners to advise against those beliefs, the regulation also violates the Free Exercise Clauses of the Federal and New York Constitutions.

4.    Accordingly, Plaintiffs seek a declaratory judgment that § 181.21 of the New York City Health Code is unconstitutional, and injunctive relief barring its enforcement.

## I.    JURISDICTION, VENUE, AND OTHER PRELIMINARY MATTERS

5.    Because this action arises under the Constitution (*viz.*, the First Amendment) and laws (*viz.*, 42 U.S.C. § 1983) of the United States, this Court has jurisdiction pursuant to the federal-question jurisdiction statute, 28 U.S.C. § 1331.

6.     The court also has supplemental jurisdiction over all state law claims that form part of the same case or controversy under 28 U.S.C. § 1367.

7.     Plaintiffs also seek declaratory and injunctive relief under 28 U.S.C. §§ 2201-02, Federal Rule of Civil Procedure 57, and Federal Rule of Civil Procedure 65.

8.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(l) and (b)(3) because Defendants reside within the State of New York and at least one of them resides within this judicial district.  Venue is also proper under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## II.    **THE PARTIES**

9.     Plaintiff Central Rabbinical Congress of the United States and Canada ("CRC") is a non-profit organization, incorporated in New York, with headquarters at 85 Division Ave., Brooklyn, NY 11249.  The CRC was founded in 1953 by the late Grand Rabbi Joel Teitelbaum of Satmar to renew and strengthen the strict adherence, without deviation, to the Orthodox and Hasidic traditions within the Jewish communities in the United States and Canada.  Its membership consists of close to 300 leading Orthodox Jewish Grand Rabbis and communal leaders, including *mohelim* who adhere strictly to the practice of MBP.  The CRC serves as a central rabbinical body to rule on all religious issues and laws.

10.    Plaintiff Agudath Israel of America ("AIA") is a non-profit organization, incorporated in New York, with headquarters at 42 Broadway, New York, NY 10004.  AIA was founded ninety years ago to unite a broad array of Orthodox Jews, and to serve and advocate the interests of Orthodox Jewry.  It sponsors numerous educational, social, and religious programs for needy persons from all backgrounds. Included among AIA's constituents are a substantial number of rabbis who teach, and *mohelim* and families that follow the teaching, that MBP is an integral, indispensable part of the religious commandment of Jewish ritual circumcision.

3

11.     Plaintiff International Bris Association ("IBA") is a non-profit organization, incorporated in New York, with headquarters at 541 Montgomery St., Brooklyn, NY.  IBA is committed to promoting the sacred observance of the circumcision ritual, and to providing education and information about this practice.  The IBA also assists in locating and coordinating *mohelim* for those who are in need of a *mohel*'s services.

12.     Plaintiff Rabbi Samuel Blum is a *mohel* who resides at 102 Kasho Dr., Bedford Hills, NY 10507.  Rabbi Blum performs circumcisions in New York City regularly, without demanding any payment in return, and always conducts MBP as part of the circumcision, because he believes that, under Jewish law, *metzitzah* is to be performed using that procedure.  He anticipates being asked to perform a circumcision shortly after the effective date of § 181.21.

13.     Plaintiff Rabbi Aharon Leiman is a *mohel* who resides at 1802 Ocean Pkwy., Apt. A-10, Brooklyn, NY 11223.  Rabbi Leiman performs circumcisions in New York City regularly, without demanding any payment in return, and always conducts MBP as part of the circumcision, because he believes that, under Jewish law, *metzitzah* is to be performed using that procedure.  He anticipates being asked to perform a circumcision shortly after the effective date of § 181.21.

14.     Plaintiff Rabbi Shloime Eichenstein is a *mohel* who resides at 341 Wallabout St., Apt. 3B, Brooklyn, NY 11206.  Rabbi Eichenstein performs circumcisions in New York City regularly, without demanding any payment in return, and always conducts MBP as part of the circumcision, because he believes that, under Jewish law, *metzitzah* is to be performed using that procedure.  He anticipates being asked to perform a circumcision shortly after the effective date of § 181.21.

15.     Members of Plaintiffs CRC, AIA, and IBA, along with Plaintiffs Blum, Leiman, and Eichenstein believe that MBP, properly performed using appropriate precautions, is a very

safe procedure, and object to being forced to transmit Defendants' opinion that MBP "should not be performed." That advice is contrary to their religious beliefs, and it would denigrate those beliefs to repeat that advice. Indeed, they believe it would be sinful to discourage parents from performing the *bris milah* ritual in what they regard as the religiously correct manner. Plaintiffs also object to the requirement that they tell the parents of children being circumcised that MBP "exposes an infant to the risk of transmission of herpes simplex virus infection," because in their view and experience, the *metzitzah* process is safe and does not pose those risks.

16.     Defendant Department of Health and Mental Hygiene of the City of New York ("Department"), located at 125 Worth St., New York, NY 10013, regulates matters and enforces laws related to public health in the City of New York. *See* New York City Charter § 556. The Department proposed § 181.21 and will have responsibility for its enforcement.

17.     Defendant New York City Board of Health ("Board"), located at 125 Worth St., New York, NY 10013,  is responsible for promulgating the New York City Health Code. *See* New York City Charter § 558. Pursuant to its authority, the Board adopted § 181.21, and will have responsibility for enforcing it.

18.     Defendant Dr. Thomas Farley, located at 125 Worth St., New York, NY 10013, is the New York City Health Commissioner ("Commissioner"). As Commissioner, Dr. Farley is responsible for the enforcement of the New York City Health Code, including § 181.21. *See* New York City Charter §§ 551, 555, 556.

19.     An actual, justiciable controversy currently exists between Plaintiffs and Defendants (collectively, the "Department"). Absent a declaration invalidating § 181.21, *mohel* members of Plaintiffs CRC, AIA, and IBA (collectively, the "plaintiff organizations"), as well as Plaintiffs Blum, Leiman, and Eichenstein (collectively, the "plaintiff *mohelim*"), will be forced to

serve as the Department's mouthpiece for dispensing opinion and "advice" that directly undermines the required religious ritual that these *mohelim* regularly perform, in violation of their rights to freedom of speech and freedom of religious exercise. Section 181.21, if not invalidated, also threatens to undermine the religious mission of the plaintiff organizations.

### III.   FACTUAL BACKGROUND

#### A.   The Religious Practice of MBP

20.    Under Jewish law, all male children are required to be circumcised on the eighth day after birth. This is known as the *bris milah* ceremony.

21.    One of the essential steps of the *bris milah* ritual is *metzitzah*, during which suction is used to draw blood from the area of the circumcision wound. Traditionally, *metzitzah* is performed using direct oral suction, or *metzitzah b'peh* ("MBP"). Many religious authorities maintain that MBP is the proper means, or even the only acceptable means, under Jewish law, of performing *metzitzah* and thus of completing the *bris* in accordance with religious requirements.

22.    *Mohelim*, the individuals who perform ritual circumcisions, are carefully trained to ensure that MBP is performed in a safe manner. Among other precautions, *mohelim* do not perform circumcisions if they are exhibiting any symptoms of the herpes simplex virus ("HSV"), such as cold sores; they minimize the duration of the oral contact with the wound, so that it takes only approximately one second; and they employ sterile technique, by rinsing their mouths with an antiseptic, such as alcohol or mouthwash, before performing the ritual.

#### B.   The Department's Adoption of § 181.21

23.    In June 2012, the Department issued a notice of public hearing to address a proposed amendment to Article 181 of the New York City Health Code. The proposal called for a new § 181.21, which—per the Department's statement of basis and purpose for the regulation— was designed to target the "practice known as *metzitzah b'peh*."

6

24.     In the media, the Department's deputy commissioner for disease control described the regulation as an effort to "regulat[e] how part of a religious procedure is done."  Sharon Otterman, *City Urges Requiring Consent for Jewish Rite*, N.Y. TIMES, June 12, 2012, at A23.

25.     The proposed § 181.21 would have required the *mohel* to tell the parent of the child being circumcised that MBP "exposes the infant to the risk of transmission of herpes simplex virus infection and other infectious diseases."  The parent would then be required to record in writing his or her consent to the procedure.

26.     The Department accepted public comments on the proposal, and held a public hearing on July 23, 2012.  Subsequently, at a meeting on September 13, 2012, the Department's Board of Health voted to adopt a revised version of the proposal.

27.     In lieu of the warning that MBP "exposes the infant to the risk of transmission of herpes simplex virus infection and other infectious diseases," the regulation as adopted compels the *mohel* to inform the parents that "the [Department] advises parents that direct oral suction should not be performed because it exposes an infant to the risk of transmission of herpes simplex virus infection, which may result in brain damage or death."  (*Id.*)

28.     The parent must provide "written signed and dated consent" for the procedure, which the *mohel* must retain for a year.  (*Id.*)

29.     The new regulation was officially published in the City Record on September 21, 2012, and will therefore automatically become effective on October 21, 2012.

30.     Independent of this regulation, the Department has also begun to publish and distribute pamphlets describing the alleged risks of MBP and urging that it be avoided.

**C.   The Flawed Basis for the Department's Regulation**

31.     The Department premised its regulation on findings published by members of the Department's staff in the Centers for Disease Control and Preventions' *Morbidity and Mortality*

*Weekly Report*.  That report purported to identify five cases, over nearly six years, of infants who were suspected to have undergone MBP and later developed herpes simplex virus ("HSV") infection.  Those five cases were a small fraction of the 84 cases of HSV reported over that same period; the rest of them involved girls, uncircumcised boys, and boys who did not undergo MBP.

32.     Those five cases conform to the baseline incidence rates for HSV in the general population.  In other words, they do not demonstrate any statistically significant correlation between MBP and HSV, much less a causal link.

33.     The Department's report concluded otherwise only by vastly underestimating the number of babies who undergo MBP each year.  It used outdated and inaccurate data, and underestimated (or ignored) the actual frequency of MBP in various Jewish communities.  The Department's report also underestimated the incidence of HSV in the general population, further skewing its conclusions about the relative risk allegedly posed by MBP.  Correcting these errors reveals that there is no statistically significant correlation between MBP and HSV.

34.     Moreover, the Department's identification of these five cases is dubious on several levels.  Only two of the five infants are confirmed to have received MBP, and there is good reason to believe that not all five did.  Two of the five cases involve siblings, suggesting that the infection may have stemmed from a common household source.  In one case, the HSV infection developed nearly three weeks after the circumcision, even though the recognized incubation period is 2-12 days.  And in one case, there is strong basis to believe that the infant contracted the infection from a symptomatic sibling with whom he was in close physical contact.

35.     If even *one* of the five cases was erroneously identified, the Department's analysis would not have showed *any* statistically significant association between MBP and HSV, even using their inaccurate baseline assumptions.  Furthermore, the clinical study that formed the basis

for the report was methodologically flawed because it failed to define a time frame or sample size in advance, thus casting further doubt on the statistical significance of the report's conclusions.

36.   Evidence from Israel, where MBP is performed far more frequently, confirms that there is no statistically significant correlation between MBP and HSV.

## IV.   CLAIMS

### COUNT I
### Violation of the Free Speech Clause
### of the First Amendment to the United States Constitution

37.   Plaintiffs repeat and reallege each of the foregoing allegations in this Complaint.

38.   The Free Speech Clause of the First Amendment protects not only the right to speak but also the right not to speak.  It guarantees individuals the power to choose the content of their speech.  Under the First Amendment, government cannot even compel *factual* statements, much less statements of opinion or subjective judgment.  Government-compelled speech is subject to strict scrutiny, and can only survive if the government can demonstrate a compelling interest for its action; that its regulation is narrowly tailored to advance that interest; and that there are no less-restrictive means by which the its interest could be met.

39.   Section 181.21 requires *mohelim* to disseminate advice—the Department's opinion about the value of MBP relative to its alleged risks—with which they disagree, and to issue a warning that they believe to be inaccurate or (at best) misleading.  It therefore compels *mohelim* to utter government-dictated speech that they would not otherwise make.

40.   The factual record does not establish a compelling interest for the regulation.  The Department's claim that MBP exposes infants to a "risk of transmission of herpes simplex virus infection" has not been conclusively established and, as explained above, is based on limited study, questionable assumptions, and methodological errors.

41.     Section 181.21 is not narrowly tailored to the goal of limiting the spread of HSV, because it regulates only speech uttered in the context of a religious ritual and does nothing to address far greater risks of HSV transmission.

42.     Nor is § 181.21 the least restrictive means to further the government's alleged interest.  Among other things, the Department could, consistent with the Free Speech Clause, transmit its message itself directly.  Indeed, the Department has already begun to publish and distribute pamphlets describing the alleged risks of MBP and urging that it be avoided. The Department's independent efforts to spread its message about MBP proves that it lacks the need—and thus the legal authority—to compel *mohelim* to do the same work for it.

43.     Section 181.21 cannot be justified as a regulation of commercial or professional speech, as *mohelim* are not commercial actors or licensed professionals.  They do not demand any payment in exchange for performing the *bris milah*, and they are motivated by religious, not economic, incentives.  Nor are they licensed by the Department or any other government body.

44.     In any event, the disclosures mandated by § 181.21 are not purely factual and uncontroversial, and so could not be mandated in any context.  Rather, they require *mohelim* to transmit the value-based opinion that MBP "should not be performed," and to repeat "facts" that remain the subject of active and reasonable debate in the medical and scientific communities.

45.     The regulation also forces *mohelim* to make misleading statements that are subject to misinterpretation.  Among other things, the disclosure says nothing about precautions that *mohelim* can take in performing MBP, nor does it quantify the alleged risk.

46.     For these reasons, § 181.21 violates the constitutional right of *mohelim* to freedom of speech under the First Amendment.

47.     Plaintiffs have no remedy at law for such deprivation of rights.

## COUNT II
## Violation of the Free Exercise Clause
## of the First Amendment

48.      Plaintiffs repeat and reallege each of the foregoing allegations in this Complaint.

49.      The free exercise of religion protected by the First Amendment to the United States Constitution includes both freedom to believe and freedom to act.

50.      Laws that burden religious exercise in a non-neutral or non-generally applicable way are subject to strict scrutiny, and can only survive if the government can demonstrate a compelling interest for its action; that its regulation is narrowly tailored to advance that interest; and that there are no less-restrictive means by which the its interest could be met.

51.      Section 181.21 is not neutral or generally applicable because it singles out and targets exclusively religious conduct for disfavored treatment, namely compelled risk disclosures and a special consent form not required for other procedures.  In particular, § 181.21 is directed only at the practice of MBP, which is a Jewish ritual not practiced by anyone else.  In practical terms, MBP is the only conduct subject to § 181.21, which was drafted to achieve this result.

52.      Indeed, Defendants have expressly admitted that § 181.21 was designed to target the "practice known as *metzitzah b'peh*," and the Department's deputy commissioner for disease control described the regulation as an effort to "regulat[e] how part of a religious procedure is done," Otterman, *City Urges*, *supra*.  Contextual evidence confirms that  § 181.21 represents "an escalation of the city's efforts to curtail the ancient Jewish procedure of *metzitzah b'peh*."  *Id.*

53.      Section 181.21 burdens the religious exercise of *mohelim* by, among other things, requiring them to denigrate a religious ritual they believe to be mandated by Jewish law.

54.      For reasons already set forth, § 181.21 cannot survive strict scrutiny.  Section 181.21 therefore violates the federal constitutional right to the free exercise of religion.

55.      Plaintiffs have no remedy at law for such deprivation of rights.

## COUNT III
## Action Under 42 U.S.C. § 1983

56.     Plaintiffs repeat and reallege each of the foregoing allegations in this Complaint.

57.     Enforcement of § 181.21 violates Plaintiffs' federal constitutional rights, as explained above, under color of law.

58.     Defendants are therefore liable to Plaintiffs pursuant to 42 U.S.C. § 1983.

## COUNT IV
## Violation of the Free Exercise Clause
## of the New York Constitution

59.     Plaintiffs repeat and reallege each of the foregoing allegations in this Complaint.

60.     The New York Constitution guarantees that "[t]he free exercise and enjoyment of religious profession and worship, without discrimination or preference, shall forever be allowed in this state to all humankind."  N.Y. CONST. art. I, § 3.

61.     Under New York law, when any law imposes even an incidental burden on the free exercise of religion, that law is subject to a balancing test that weighs the right to free exercise against the interest allegedly advanced by the challenged law.

62.     Section 181.21 burdens religious practice by requiring *mohelim* to convey Defendants' opinions about MBP.  Doing so contradicts the tenets of their faith and undermines a religious ritual that they believe to be mandated by Jewish law.

63.     As explained above, the Department's "advice" is based on faulty scientific evidence and therefore will not limit the transmission of HSV.  In any event, the Department's "advice" almost certainly will not dissuade parents who consider themselves religiously bound to choose MBP for their sons from proceeding with that practice.  Section 181.21 therefore will not in any case advance the Department's goal of controlling the spread of HSV.

64.     Section 181.21 fails the balancing test under the New York Free Exercise Clause, as its interference with religious practice is not justified by the regulation's actual impacts.

65.     Consequently, § 181.21 violates the New York Free Exercise Clause.

## V.     REQUESTS FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully pray that this Court:

1.      Enter a declaratory judgment that § 181.21 violates the Free Speech Clause of the First Amendment, the Free Exercise Clause of the First Amendment, and the Free Exercise Clause of the New York Constitution;

2.      Enter a preliminary and, ultimately, a permanent injunction prohibiting the application or enforcement of § 181.21; and

3.      Award all other relief as the Court may deem just and proper, including any costs or fees to which Plaintiffs may be entitled by law.

Dated: October 11, 2012
       New York, New York

                          Respectfully submitted,
                          JONES DAY

By: _____
                          Todd R. Geremia
                          222 East 41st Street
                          New York, New York 10017
                          Phone: (212) 326-3939
                          Fax:    (212) 755-7306

                          Michael A. Carvin*
                          Shay Dvoretzky*
                          Yaakov Roth*
                          51 Louisiana Avenue NW
                          Washington, DC 20001
                          Phone: (202) 879-3939
                          Fax:    (202) 626-1700

                          *Attorneys for Plaintiffs*

                          * *application for admission pro hac vice pending*