UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

CENTRAL RABBINICAL CONGRESS OF THE USA &
CANADA, AGUDATH ISRAEL OF AMERICA,
INTERNATIONAL BRIS ASSOCIATION, RABBI
SAMUEL BLUM, RABBI AHARON LEIMAN, and
RABBI SHLOIME EICHENSTEIN,

12 Civ. 7590 (NRB)

Plaintiffs,

ECF Case

-against-

NEW YORK CITY DEPARTMENT OF HEALTH AND
MENTAL HYGIENE, NEW YORK CITY BOARD OF
HEALTH, and DR. THOMAS FARLEY in his official
capacity as Commissioner of the New York City
Department of Health and Mental Hygiene,

Defendants.

------------------------------------------------------------------------ x

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

MICHAEL A. CARDOZO
Corporation Counsel
  of the City of New York
Attorney for Defendants
100 Church Street, 5th Floor
New York, New York  10007
(212) 788-0758

November 15, 2012

GABRIEL TAUSSIG,
MICHELLE GOLDBERG-CAHN,
RACHEL K. MOSTON,
          Of Counsel.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................ iii

PRELIMINARY STATEMENT ........................................................................... 1

ARGUMENT ........................................................................................................ 3

                Standard for a Preliminary Injunction ................................................ 3

POINT I

                HEALTH CODE § 181.21 DOES NOT INFRINGE
ON PLAINTIFFS' FREE EXERCISE RIGHTS
AND IS CONSTITUTIONAL ....................................................................... 4

                A. Free Exercise Clause ............................................................................. 4

                B. Health Code § 181.21 is Facially Neutral and
Generally Applicable ........................................................................... 5

                C. Health Code § 181.21 Survives Even Strict
Scrutiny Review ................................................................................... 9

                      (1)   Compelling State Interest ....................................................... 10

                      (2)   The Consent Requirement is Narrowly
Tailored to Protect Public Health ........................................ 14

                D. Health Code § 181.21 Survives Review Under
N.Y. Constitution Free Exercise Clause ............................................ 16

POINT II

                THE REGULATION DOES NOT VIOLATE THE
FREE SPEECH CLAUSE OF THE FIRST
AMENDMENT ............................................................................................ 18

                A. Health Code § 181.21 Does Not
Unconstitutionally Compel Speech ..................................................... 18

                B. The Required Disclosure on the Consent Form
Constitutes Government Speech .......................................................... 22

**Page**

C. Health Code § 181.21 is Constitutional Under the Professional Speech Doctrine Because it Requires the Disclosure of Truthful, Non-Misleading Information .................................................................25

D. Health Code § 181.21 Satisfies Strict Scrutiny....................................28

(1) Compelling Government Interest..............................................28

(2) Narrowly Tailored....................................................................29

CONCLUSION......................................................................................................... 31

## TABLE OF AUTHORITIES

<u>**Cases**</u>                                                                                                   <u>**Pages**</u>

<u>Bery v. City of New York</u>,
   97 F.3d 689 (2d Cir. 1996),
   <u>cert. denied</u>, 520 U.S. 1251 (1997) ................................................................. 3

<u>Boone v. Boozman</u>,
   217 F. Supp. 2d 938 (E.D. Ark. 2002) ......................................................... 7

<u>Braunfeld v. Brown</u>,
   366 U.S. 599 (1961) ................................................................................... 5, 8

<u>Brown v. Entm't Merchants Ass'n</u>,
   131 S. Ct. 2729 (2011) ................................................................................ 12

<u>Catholic Charities of the Diocese of Albany v. Serio</u>,
   7 N.Y.3d 510 (2006) ................................................................................... 16

<u>Cantwell v. Connecticut</u>,
   310 U.S. 296 (1940) ...................................................................................... 5

<u>Caviezel v. Great Neck Pub. Sch.</u>,
   739 F. Supp. 2d 273 (E.D.N.Y. 2010) .......................................................... 7

<u>Choose Life Illinois, Inc. v. White</u>,
   547 F.3d 853 (7th Cir. 2008) ...................................................................... 23

<u>Church of the Lukumi Babalu Aye. Inc. v. City of Hialeah</u>,
   508 U.S. 520 (1993) ................................................................... 5, 6, 8, 9, 12

<u>Citizens United v. Fed. Election Comm'n</u>,
   558 U.S. 310 (2010) ............................................................................. 10, 14

<u>Columb v. Roman Catholic Diocese of Burlington Vt., Inc.</u>,
   10 Cv. 245, 2012 U.S. Dist. LEXIS 140190 (2d Cir. Sept. 28, 2012) ....................................... 18

<u>Dandamudi v. Tisch</u>,
   686 F.3d 66 (2d Cir. 2012) .......................................................................... 10

<u>Davis v. Beason</u>,
   133 U.S. 333 (1890) ...................................................................................... 8

<u>Employment Div. Dep't of Human Servs. of Oregon v. Smith</u>,
   494 U.S. 872 (1990) ................................................................................... 5, 6

**Cases**                                                                 **Pages**

Evergreen Ass'n v. City of New York,
   801 F. Supp. 2d 197 (S.D.N.Y. 2011).................................................... 27, 28

FCC v. Beach Comm., Inc.,
   508 U.S. 307 (1993)............................................................................. 14

Federal Election Comm'n v. Wisconsin Right to Life, Inc.,
   551 U.S. 449 (2007)............................................................................. 10

Fifth Ave. Presbyterian Church v. City of New York,
   293 F.3d 570 (2d Cir. 2002).................................................................. 18

Fortress Bible Church v. Feiner,
   694 F.3d 208 (2d Cir. 2012).............................................................. 17, 18

Fowler v. Missouri Dep't of Corrections,
   534 F.3d 931 (8th Cir. 2008)................................................................ 13

Frisby v. Schultz,
   487 U.S. 474 (1988)............................................................................. 29

Fullilove v. Klutznick,
   448 U.S. 507 (1980)............................................................................. 14

Gillette v. U.S.,
   401 U.S. 437 (1971)............................................................................... 5

Globe Newspaper Co. v. Superior Court,
   457 U.S. 596 (1982)............................................................................. 10

Gonzalez v. Carhart,
   550 U.S. 124 (2007)............................................................................. 26

Greater Balt. Ctr. for Pregnancy Concerns v. Mayor & City Council,
   683 F.3d 539 (4th Cir. 2012) ............................................................... 27

Grutter v. Bollinger,
   539 U.S. 306 (2003)............................................................................. 28

Harrisonville v. W.S. Dickey Clay Mfg. Co.,
   289 U.S. 334 (1933)............................................................................... 3

Hobbie v. Unemployment Appeals Comm'n of Fla.,
   480 U.S. 136 (1987)............................................................................... 8

**Cases**                                                                                    **Pages**

Johanns v. Livestock Mkt'ing Ass'n,
   544 U.S. 550 (2005) ................................................................................ 18, 22, 23, 24

Johnson v. California,
   336 F.3d 1117 (9th Cir. 2003) .......................................................................... 29

Locke v. Davey,
   540 U.S. 712 (2004) ........................................................................................... 7

McDaniel v. Paty,
   435 U.S. 618 (1978) ........................................................................................... 8

McGowan v. Maryland,
   366 U.S. 420 (1961) ........................................................................................... 8

Million Youth March, Inc. v. Safir,
   155 F.3d 124 (2d Cir. 1998) .............................................................................. 3

NAACP v. Button,
   371 U.S. 415 (1963) ......................................................................................... 29

National Electrical Manufactures Ass'n v. Sorrell,
   272 F.3d 104 (2d Cir. 2001) ............................................................................ 28

New York v. Ferber,
   458 U.S. 747 (1982) ......................................................................................... 10

Planned Parenthood of Southeastern Pa. v. Casey,
   505 U.S. 833 (1992) ................................................................................... 25, 28

Planned Parenthood v. Rounds,
   636 F.3d 839 (8th Cir. 2012) ................................................................. 13, 26, 29

Plaza Health Labs., Inc. v. Perales,
   878 F.2d 577 (2d Cir. 1989) .............................................................................. 3

Pleasant Grove City, Utah v. Summum,
   555 U.S. 460 (2009) ................................................................................... 22, 23, 24

Prince v. Massachusetts,
   321 U.S. 158 (1944) ..................................................................................... 5, 10

R.J. Reynolds Tobacco Co. v. Shewry,
   423 F.3d 906 (9th Cir. 2005) .......................................................................... 23

**Cases**                                                                 **Pages**

Reynolds v. U.S.,
    98 U.S. 145 (1879) .......................................................................... 5

Rosenberger v. Rector & Visitors of the Univ. of Va.,
    515 U.S. 819 (1995) ........................................................................ 23

Rumsfeld v. FAIR,
    547 U.S. 47 (2006) ............................................................. 20, 21, 22

Sable Communications of Calif., Inc. v. FCC,
    492 U.S. 115 (1989) ........................................................................ 10

School Bd. of Nassau County, Florida v. Arline,
    480 U.S. 273 (1987) .................................................................. 28, 29

Sherbert v. Verner,
    374 U.S. 398 (1963) .......................................................................... 8

Sherr v. Northport-East Northport Union Free Sch. Dist.,
    672 F. Supp. 81 (E.D.N.Y. 1988) ................................................ 7, 10

St. Joseph Hosp. of Cheektowaga v. Novello,
    43 A.D.3d 139 (4th Dep't 2007) ..................................................... 16

Standard & Poor's Corp. v. Commodity Exchange, Inc.,
    683 F.2d 704 (2d Cir. 1982) .............................................................. 4

Storman's, Inc. v. Selecky,
    586 F.3d 1109 (9th Cir. 2009) .......................................................... 5

Strickland v. City of Seattle,
    2009 U.S. Dist. LEXIS 81787 (W.D. Wa. Sep. 9, 2009) ............. 22, 25

Tex. Med. Providers Performing Abortion Servs. v. Lakey,
    667 F.3d 570 (5th Cir. 2012) .......................................................... 26

Thomas v. Review Bd. of Indiana Empl. Security Div.,
    450 U.S. 707 (1981) .......................................................................... 8

Thompson v. Western States Med. Ctr.,
    535 U.S. 357 (2002) ........................................................................ 30

Turner Broad. Sys. v. FCC,
    520 U.S. 180 (1997) ........................................................................ 29

**Cases**                                                                 **Pages**

U.S. v. Lee,
   455 U.S. 252 (1982) ........................................................................................... 5

U.S. v. Wilgus,
   638 F.3d 1274 (10th Cir. 2011) ..................................................................... 14

Weinberger v. Romero-Barcelo,
   456 U.S. 305 (1982) ........................................................................................... 3

West Virginia Bd. of Educ. v. Barnette,
   319 U.S. 624 (1943) .................................................................................. 18, 19

Wisconsin v. Yoder,
   406 U.S. 205 (1972) ........................................................................................... 5

Wooley v. Maynard,
   430 U.S. 705 (1977) ........................................................................... 18, 19, 20

Workman v. Mingo County Schs.,
   667 F. Supp. 2d 679 (S.D. W. Va. 2009) ....................................................... 7

Yakus v. United States,
   321 U.S. 414 (1944) ........................................................................................... 4

Zakhartchenko v. Weinberger,
   159 Misc.2d 411 (N.Y. Sup. Ct., Kings Co. 1993) .................................... 27

Zauderer v. Office of Disciplinary Counsel,
   471 U.S. 626 (1985) ........................................................................................ 28

**Statutes**

New York Educ. Law § 6527 ...................................................................... 26

New York City Health Code §§ 3.11 and 3.13 .......................................... 8

New York City Health Code § 181.21.............................................. passim

Defendants, the New York City Department of Health & Mental Hygiene ("DOHMH"), the New York City Board of Health, and Dr. Thomas Farley, in his official capacity as Commissioner of DOHMH, by their attorney, Michael A. Cardozo, Corporation Counsel of the City of New York, submit this memorandum of law in opposition to plaintiffs' motion for a preliminary injunction ("Pl. Mem.").

## PRELIMINARY STATEMENT

Organizational plaintiffs, Central Rabbinical Congress of the USA & Canada, Agudath Israel of America, and the International Bris Association, along with individuals who perform ritual circumcisions in New York City, commenced this action challenging the recent amendment to Article 181 of the New York City Health Code ("Health Code"), § 181.21, requiring persons performing direct oral suction of the infant penis in connection with circumcision of an infant boy to obtain the consent of the infant's parent or legal guardian before doing so. Plaintiffs claim that their First Amendment rights guaranteed to them by the Free Exercise Clause of the United States Constitution prohibit DOHMH from promulgating a rule that ensures that parents of infants who are about to have direct oral suction of the open wound of the infant's genitals to knowingly consent to the risk of the transmission of herpes simplex virus ("HSV") type 1 ("HSV-1") associated with oral to genital contact of an infant as a means of protecting the health of infants.

HSV infection in a newborn can have serious consequences, including permanent disability or death. In a period of over ten years, DOHMH became aware of 11 cases of laboratory-confirmed HSV infection in the weeks following out-of-hospital ritual circumcision, where ten of the newborns were hospitalized and two of them died. In six of those cases, there was confirmation that the ritual circumcision included mouth to genital contact. Certain Jewish sects practice direct oral suction as part of ritual circumcision wherein the person performing the

circumcision places his mouth directly on the newly circumcised penis and sucks the blood away from the circumcision wound.  There have been reports of instances of direct oral suction being performed where the parents are not members of these sects and without their knowledge in advance.  DOHMH, exercising its broad regulatory powers to protect the public health, amended the Health Code to require those performing direct oral suction to obtain the consent of the parents before doing so in order to inform parents that the procedure would be done and that there are risks of contracting HSV, which can be lethal in the case of a newborn.  Nothing in Health Code § 181.21 purports to ban or prohibit direct oral suction in connection with ritual circumcision – although DOHMH has the authority to do so.

Plaintiffs' motion is premised upon fatal mistakes in law and fact.  First, requiring the consent of parents prior to direct oral suction on a newborn infant in no way infringes on plaintiffs' First Amendment rights under the Free Exercise Clause of the U.S. or N.Y. Constitution.   The protection of public health – in particular, protecting newborns from infectious diseases that could permanently disable them or cause death – is indisputably a vital state interest.  Health Code § 181.21 simply requires consent prior to performing the procedure with direct oral suction.  Clearly, requiring that parents be informed of the fact that DOHMH has concluded that there are health risks associated with direct oral contact with the freshly circumcised wound advances the interest of protecting the public health under any standard of review.  The City has the authority (and, indeed mandate) to regulate dangerous activity, such as direct oral suction, to protect the public health, including the authority to ban the ritual.  Here, however, defendants have only passed a rule requiring parental consent prior to performing direct oral suction.  Second, the consent required makes plain that it is the view of DOHMH that

direct oral suction poses a health risk.  Thus, plaintiffs' argument that Health Code § 181.21 violates the First Amendment guarantee by compelling certain speech is without merit.

## ARGUMENT[1]

### Standard for a Preliminary Injunction

Where "the moving party seeks to stay governmental action taken in the public interest pursuant to a statutory or regulatory scheme," as is the case here, a preliminary injunction may only be granted if the moving party meets the more rigorous likelihood-of-success on the merits of its claim standard.  Plaza Health Labs., Inc. v. Perales, 878 F.2d 577, 580 (2d Cir. 1989).  The Second Circuit has held that "[v]iolations of First Amendment rights are commonly considered irreparable injuries for the purposes of a preliminary injunction."  Bery v. City of New York, 97 F.3d 689, 693 (2d Cir. 1996), cert. denied, 520 U.S. 1251 (1997).  Thus, in this case, the irreparable injury requirement dovetails with the requirement that plaintiffs demonstrate a likelihood of success on the merits.  Plaintiffs cannot make a clear showing of the likelihood of success on the merits of their claims.  "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction."  Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982); see also, Harrisonville v. W.S. Dickey Clay Mfg. Co., 289 U.S. 334, 337-338 (1933); Million Youth March, Inc. v. Safir, 155 F.3d 124 (2d Cir. 1998)(modifying injunction because District Court failed to consider government's interest in public health, safety and convenience in

---

[1] The relevant facts are set forth in the accompanying Declaration of Dr. Thomas Farley, dated November 15, 2012 ("Farley Dec."), Declaration of Michelle Goldberg-Cahn, dated November 15, 2012 (Goldberg-Cahn Dec."), Affidavit of Dr. David Kimberlin, sworn to October 22, 2012 ("Kimberlin Aff."), Affidavit of Dr. Richard Whitley, sworn to October 29, 2012 ("Whitley Aff."), Affidavit of Dr. Lawrence Stanberry, sworn to October 29, 2012 ("Stanberry Aff."), Affidavit of Dr. Anna Wald, sworn to October 30, 2012 ("Wald Aff."), and Declaration of Andrew Gelman, Ph.D., dated November 12, 2012 ("Gelman Dec."), and exhibits annexed thereto.

balance against First Amendment rights).[2]  As set forth below, the relief sought by plaintiffs is

not in the public interest, because the consent requirement in Health Code § 181.21 is designed

to protect the health and safety of infants.  Indeed, as set forth in the Statement of Basis and

Purpose accompanying the promulgation of the amendments to the Health Code, the consent

requirement is intended to ensure that parents are aware that DOHMH warns that direct oral

suction can lead to herpes infection which can be lethal.[3]  As plaintiffs cannot meet the rigorous

standard to be entitled to a preliminary injunction, and as issuance of the injunction is not in the

public interest,[4] plaintiffs' motion for a preliminary injunction should be denied.

### POINT I

**HEALTH CODE § 181.21 DOES NOT INFRINGE ON PLAINTIFFS' FREE EXERCISE RIGHTS AND IS CONSTITUTIONAL**

**A.      Free Exercise Clause**

Plaintiffs' contention that Health Code § 181.21 violates the Free Exercise Clause

of the First Amendment of the U.S. Constitution is not likely to succeed on the merits.  See

Complaint, ¶¶ 48-55.  The Free Exercise Clause, applied to the states through the Fourteenth

---

[2] In considering an injunction, the Court must balance the interests and possible injuries to both parties.  See Yakus v. United States, 321 U.S. 414, 440 (1944).  Whether the relief sought is in the public interest is a factor to be considered.  See Standard & Poor's Corp. v. Commodity Exchange, Inc., 683 F.2d 704 (2d Cir. 1982).

[3] The Statement of Basis and Purpose provides, "that the parent or guardian has been told that the Department advises against direct oral suction because of certain risks associated with the practice, including infection with herpes simplex virus and its potentially serious consequences, such as brain damage and death, as well as exposure to other infectious diseases.  Knowing the risks posed by direct oral suction, a parent or legal guardian can then make an informed choice about whether it should be performed as part of the circumcision."  Goldberg-Cahn Dec., Exhibit "B" (emphasis added).

[4] An injunction is clearly against the public interest insofar as the challenged rule was promulgated to protect infants from exposure to herpes, which has serious health consequences and may be lethal.  Every circumcision with direct oral suction that is performed carries with it a risk of infant death.  And, while the rule does not preclude direct oral suction from occurring, it does ensure that parents are educated about the risk of herpes infection, which may make them less likely to choose it.  Thus, enjoining the rule is contrary to the protection of the health of infants.

Amendment, provides that: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." Cantwell v. Connecticut, 310 U.S. 296, 303 (1940).

Free Exercise jurisprudence embraces two concepts: the "freedom to believe and freedom to act." Cantwell, 310 U.S. at 303-04. However, although the Supreme Court has found that the freedom to believe is "absolute," the freedom to act "cannot be." Id. "Conduct remains subject to regulation for the protection of society." Id. at 304. The Supreme Court has rejected the idea that regulation by government of conduct grounded in religion is always outside the protection of the Free Exercise Clause. "[A]ctivities of individuals, even when religiously based, are often subject to regulation by the States in the exercise of their undoubted power to promote the health, safety, and general welfare . . . ." Wisconsin v. Yoder, 406 U.S. 205, 220 (1972); see also Gillette v. U.S., 401 U.S. 437 (1971); Braunfeld v. Brown, 366 U.S. 599 (1961); Prince v. Massachusetts, 321 U.S. 158 (1944); Reynolds v. U.S., 98 U.S. 145 (1879).

**B.    Health Code § 181.21 is Facially Neutral and Generally Applicable**

The seminal Free Exercise cases are Church of the Lukumi Babalu Aye. Inc. v. City of Hialeah, 508 U.S. 520 (1993) and Employment Div. Dep't of Human Servs. of Oregon v. Smith, 494 U.S. 872 (1990). The right to freely exercise religious rights "does not relieve an individual of the obligation to comply with a 'valid and neutral law of general applicability on the ground that the law prescribes (or proscribes).'" Smith, 494 U.S. at 879 (quoting U.S. v. Lee, 455 U.S. 252, 263 (1982)). Laws that are neutral and generally applicable "need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice" and are not subject to strict scrutiny. Lukumi, 508 U.S. 520; Smith, 494 U.S. at 885-87. Thus, regulations that are neutral and generally applicable are subject to rational basis review. See Storman's, Inc. v. Selecky, 586 F.3d 1109, 1130 (9th Cir. 2009).

In Lukumi, the Supreme Court found that a series of ordinances that prohibited ritual animal slaughter, practiced primarily by members of the Santeria church, violated the Free Exercise Clause of the First Amendment. Lukumi, 508 U.S. at 524. The ordinances in Lukumi prohibited animal slaughter or sacrifice with the exception of licensed slaughter houses or persons intending to use such animals for food. Id. at 528. The ordinances contained many exceptions, supporting the conclusion that they were explicitly targeted at the religious exercise of members of the Santeria church.[5] The consent requirement in Health Code § 181.21, however, contains no exemptions. Anyone performing circumcision on a male infant with direct oral suction must obtain the required parental consent. Unlike in Lukumi, nothing in the rule "devalues religious reasons for [the conduct at issue] by judging them to be of lesser import than nonreligious reasons." Id. at 537-38. Moreover, plaintiffs' reliance on Lukumi for the proposition that the ordinances were unconstitutional because the only conduct subject to the ordinances was targeted at the practice of Santeria, does not support their argument here. Pl. Mem. at 23. The ordinances were riddled with exceptions such that all that remained prohibited was Santeria animal sacrifice. Here, however, though the only presently known conduct of direct oral suction on the open wound of an infant's genitals may be in connection with the religious ritual, any such conduct for any other purpose is also intended to be covered by the rule.

There are many examples upholding regulations that have an incidental impact of burdening religion. For example, in Smith, 494 U.S. at 878-79, the Supreme Court upheld a prohibition on the possession of peyote, despite that the Native American Church mandated that

---

[5] Indeed, the legislative record evidenced "significant hostility exhibited by residents, members of the city council, and other city officials towards the Santeria religion and its practice of animal sacrifice." Lukumi, 508 U.S. at 541. Here, no such animus toward religion or discriminatory intent is present anywhere in the record. In fact, DOHMH's restraint in promulgating the least intrusive rule here evinces its respect and deference to the religious practice.

peyote be ingested for sacrament.  Similarly, laws requiring that children be vaccinated before attending public schools have been upheld, despite that some religions believe vaccinating children is against their sincerely held religious beliefs.[6]  See Caviezel v. Great Neck Pub. Sch., 739 F. Supp. 2d 273, 284 (E.D.N.Y. 2010); Sherr v. Northport-East Northport Union Free Sch. Dist., 672 F. Supp. 81, 88 (E.D.N.Y. 1988); Workman v. Mingo County Schs., 667 F. Supp. 2d 679, 689 (S.D. W. Va. 2009); Boone v. Boozman, 217 F. Supp. 2d 938, 954 (E.D. Ark. 2002)("The constitutionally-protected free exercise of religion does not excuse an individual from compulsory immunization; …the right to free exercise of religion and parental rights are subordinated to society's interest in protecting against the spread of disease.").  As the court noted in Caviezel, in all of these cases "the court primarily relied on the same line of Supreme Court cases" in reaching their conclusions that compulsory vaccination regulations did not violate the Free Exercise Clause.  Caviezel, 739 F. Supp. 2d at 284.

Plaintiffs claim that because Health Code § 181.21 is not facially neutral with respect to religion, it is presumptively unconstitutional.  Pl. Mem. at 23-25.  However, the Supreme Court has expressly rejected claims that laws that are not facially neutral "are presumed unconstitutional," holding "to do otherwise would extend the Lukumi line of cases well beyond not only their facts but their reasoning."  Locke v. Davey, 540 U.S. 712, 720 (2004).  In Locke, the Court upheld a state regulation prohibiting use of a state funded scholarship program for a "degree in theology."  The Supreme Court, however, found the regulation to be a far milder intrusion into religion insofar as it does not deny ministers the right to participate in political and

---

[6] Defendants do not dispute the sincerity of plaintiffs' deeply held religious belief that direct oral suction is a crucial component to their religious practice.  Defendants note, however, that there are many sects of Judaism, including Orthodox Jewish sects, that do not engage in direct oral suction as part of the *bris*, and either use a tube, pipette, or gauze to draw away the blood.  In addition, several Jewish religious groups have spoken out against direct oral suction.  See Goldberg-Cahn Dec., ¶¶ 11, 13-15; Farley Dec., ¶ 20, Exhibit "H."

community affairs (citing McDaniel v. Paty, 435 U.S. 618 (1978)), or require students to choose among religious beliefs and receiving government aid (citing Hobbie v. Unemployment Appeals Comm'n of Fla., 480 U.S. 136 (1987); Thomas v. Review Bd. of Indiana Empl. Security Div., 450 U.S. 707 (1981); Sherbert v. Verner, 374 U.S. 398 (1963)).   Health Code § 181.21 only requires that the circumciser obtain consent prior to the act.   To the extent that plaintiffs are concerned about penalties in the event of noncompliance,[7] enforcement is based on the failure to obtain consent, and not on the act of direct oral suction itself.

In Lukumi, the Supreme Court expressly stated that an "adverse impact" on religion "will not always lead to a finding of impermissible targeting," concluding that "a social harm may have been a legitimate concern of government for reasons quite apart from discrimination." Id. (citing McGowan v. Maryland, 366 U.S. 420, 442 (1961)(upholding Sunday closing regulations); Reynolds, 98 U.S. at 145 (denying Free Exercise claim of Mormon convicted of polygamy); Davis v. Beason, 133 U.S. 333 (1890)(upholding law denying right to vote or hold public office to religions encouraging polygamy).   "To strike down, without the most critical scrutiny, legislation which imposes only an indirect burden on the exercise of religion, *i.e.* legislation which does not make unlawful the religious practice itself, would radically restrict the operating latitude of the legislature." Braunfeld, 366 U.S. at 606 (emphasis added).   Here, the consent requirement is reasonable and narrowly drawn, posing, at most, a *de minimus* burden on religion, while at the same time enabling DOHMH to take action to protect the public health from the serious health consequences of direct oral suction.   While the consent requirement may lead some parents to conclude that direct oral suction is not appropriate for

---

[7] DOHMH may enforce violations of Health Code provisions in various ways, such as seeking to obtain voluntary compliance, issuing warnings or imposing civil fines of $200 through $2,000 for each violation. See Health Code §§ 3.11 and 3.13.

their child, the challenged rule does not ban, prohibit, or otherwise prevent people who wish to continue to engage in direct oral suction as part of their ritual circumcision, from doing so.

The reported cases of HSV-1 infection in infant males associated with direct oral suction and the City's substantial interest in preventing infant morbidity led to the promulgation of the rule.[8]  A review of the "specific series of events leading to the enactment or official policy in question," bears against any finding of discriminatory intent.  Lukumi, 508 U.S. at 540-41.  An examination of the record here demonstrates that DOHMH was prompted to enact Health Code § 181.21 due to the reported cases of HSV-1 infection in infant males following direct oral suction where other sources of infection were medically determined not to be the cause of the infection.  See Goldberg-Cahn Dec., ¶¶ 4-5; Farley Dec., ¶¶ 24-45, Exhibit "K."  As such, the consent requirement was enacted "in spite of" any alleged infringement on "religious practice."  Lukumi, 508 U.S. at 540-41.  Thus, plaintiffs' assertion that the rule is presumptively unlawful because it targets religion, is unavailing.  Health Code § 181.21 is both neutral toward religion and a law of general applicability.  Because the protection of the public health clearly serves the legitimate governmental purposes of protecting infants, Health Code § 181.21 survives rational basis review.

## C.    Health Code § 181.21 Survives Even Strict Scrutiny Review

Although rational basis is the proper standard here, Health Code § 181.21 even survives the more exacting review under strict scrutiny.  It is well-settled that strict scrutiny

---

[8]  Although defendants urge that the rule is one of general applicability and neutrality, as it imposes the same consent requirements on anyone performing direct oral suction regardless of their religious beliefs, defendants acknowledge that the health concern regarding neonatal HSV-1 came to the attention of DOHMH in connection with reports of HSV-1 associated with direct oral suction performed as part of a ritual circumcision.  Farley Dec., ¶¶ 22-46, Exhibit "K."  Defendants have not encountered any reports of direct oral suction on the open wound on the penis of an infant in any other context.  However, Health Code § 181.21 is not limited to those performing direct oral suction in connection with a religious ritual.  If the conduct of direct oral suction is performed outside of ritual circumcision, it is defendants' intent that such conduct similarly be subject to the requirements in Health Code § 181.21.

"requires the Government to prove that the [challenged] restriction furthers a compelling interest and is narrowly tailored to achieve that interest." Citizens United v. Fed. Election Comm'n, 558 U.S. 310 (2010)(citing Federal Election Comm'n v. Wisconsin Right to Life, Inc., 551 U.S. 449, 464 (2007); see also Dandamudi v. Tisch, 686 F.3d 66, 79 (2d Cir. 2012).

    (1)    Compelling State Interest

It is beyond cavil that the City has a compelling – indeed, a vital – state interest in protecting the health of infants. See Sable Communications of Calif., Inc. v. FCC, 492 U.S. 115, 126 (1989)(reiterating "there is a compelling interest in protecting the physical and psychological well-being of minors"); New York v. Ferber, 458 U.S. 747, 756 (1982)("It is evident beyond the need for elaboration that a State's interest in 'safeguarding the physical and psychological well-being of a minor' is 'compelling.'")(quoting Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 607 (1982)). Courts have sustained laws aimed at protecting the physical (and even emotional) well-being of youth, even when the laws have operated in the sensitive area of constitutionally-protected rights. See Prince, 321 U.S. at 168 (upholding statute prohibiting children from distributing literature on street based on public welfare of child, notwithstanding statute's impact on religious activity); Sherr, 672 F. Supp. at 90 (recognizing "society's compelling interest in preventing disease").

The public health concerns associated with the transmission of HSV-1 to infants through direct oral suction, which has led to severe health consequences, including the death of two infant boys, are well-documented. See Farley Dec., ¶¶ 24-45, 60-63, Exhibit "K." DOHMH is not alone in concluding that direct oral suction performed during circumcision is dangerous to the public health. See Farley Dec., ¶¶ 66-69. The Centers for Disease Control and Prevention ("CDC") reached the same conclusion, along with the American Academy of Pediatrics

("AAP"), and various Jewish organizations.  Farley Dec., ¶ 66, Exhibit "O."  Specifically, in June 2012, the CDC stated that "[p]rofessionals advising parents choosing Jewish ritual circumcision should be aware of this risk, and direct orogenital suction should be avoided."  Id. Exhibit "K."  In addition, AAP issued a 2012 statement, advising "against the practice of mouth-to-genital penis contact during circumcision … because it poses serious infectious risk to the child."  Id., ¶ 66, Exhibit "O."  Moreover, experts in herpes transmission agree that oral suction poses infectious risk to the infant.  See id. ¶ 67.

Significantly, public health concerns about the transmission of communicable disease through direct oral suction are not new.  For example, published medical literature from 1916 and 1946 document penile tuberculosis cases linked to direct oral suction.  See Farley Dec., ¶¶ 18-19, Exhibits "H" and "I."  DOHMH, along with other prominent medical professionals and health organizations worldwide, have carefully studied the incidences of HSV-1 infection associated with direct oral suction following ritual circumcision for over a decade.  DOHMH's findings are entirely consistent with other case series with similar findings that have been reported in peer reviewed medical literature.  Farley Dec., ¶¶ 21-23, Exhibit "J."  DOHMH's data conclusively establishes that between 2000 and 2011, there were 11 cases of neonatal HSV-1 infection in male infants associated with direct oral suction – ten of those infants were hospitalized, two suffered severe brain damage, and two died.  Farley Dec., ¶¶ 24-47, Exhibit "K."  The protection of the health and lives of babies is clearly a compelling state interest, particularly because infants are not in a position to make decisions for themselves.

That plaintiffs take issue with the scientific methodology supporting DOHMH's conclusions is of no moment.  First, it is simply incorrect that DOHMH's conclusions are based on scientific methodology and assumptions that "remain actively debated within medical and

scientific communities." Complaint, ¶ 2. The risk for transmission of HSV-1 to infants via direct oral suction, and the dire consequences, are recognized by international experts in infectious disease, HSV, and pediatrics. See Whitley Aff., ¶¶ 5, 9, 14-15, 18-19, Kimberlin Aff., ¶¶ 3, 8, Stanberry Aff., ¶ 7, Zenilman Aff., ¶¶ 19-29, 37-38, Wald Aff., ¶¶ 20-21, Farley Dec., ¶¶ 19-43. Indeed, there is only a small number of medical professionals claiming there is no proven link.[9] See Berman Aff. Even plaintiffs' own physician, Dr. Berman, who claims there is "*no evidence* for the transmission of HSV-1 through ritual circumcision" (Berman Aff., ¶ 3), has previously publicly recanted his own statements that direct oral suction poses no risk.[10] Thus, the City's public health concern is compelling.

Second, plaintiffs incorrectly conclude that merely because they disagree with DOHMH's scientifically-sound analysis that direct oral suction caused the reported cases of neonatal HSV-1 infection leading to the death of two infants, that DOHMH has not established an "'actual problem' in need of solving." Pl. Mem. at 26 (quoting Brown v. Entm't Merchants Ass'n, 131 S. Ct. 2729, 2738 (2011)).[11] Although the City remains steadfast in its analysis of the

---

[9] Of particular note is the fact that prominent leaders of ultra-Orthodox communities, including members of plaintiffs CRC and Agudath Israel, signed the State Department of Health Protocol, which expressly provided the parties' "mutual understanding of the facts" where the parties agreed that "[b]ecause HSV-1 is known to be shed in saliva even while the person has no lesions or experiences no other signs or symptoms of active infection . . . although extremely rare, the practice of *metzitzah b'peh* could be a route of transmission for HSV-1." Farley Dec., ¶ 74, Exhibit "Q" at 4. All of the signatories to the Protocol, including the rabbis, acknowledged that HSV "is known to cause rare, but very severe infections in newborns" and that "[p]arents, then, should be fully informed by the Rabbis regarding this." Id.

[10] For example, in a March 3, 2006 letter to The Forward, Dr. Berman stated ". . . *metzitzah b'peh*—assuming the worst, which has not been proved—has had [only] one death attributed to it in the several thousands of years it has been practiced." Farley Dec., Exhibit "H," *Hakirah*, at 30. However, in a Letter to the Editor of Hakirah, Dr. Berman stated "I also stand corrected, as Dr. Sprecher has demonstrated that there is reasonable evidence that there were infections such as syphilis and tuberculosis transmitted through *metzitzah bepeh* in the 19[th] and early 20th century undercut his own conclusions. . . . it is certainly reasonable to accept that there were fatal cases of syphilis and tuberculosis transmitted through *metzitzah bepeh*." Goldberg-Cahn Dec., Exhibit "K."

[11] Plaintiffs' use of myriad adjectives to describe their position on DOHMH's scientific conclusions, does not render DOHMH's analysis of the health risks any less real. See, e.g., Pl. Mem., at 21, 26 (labeling the City's public health concerns as "speculative," of "marginal impact," "flimsy," "strikingly thin," and "too arguable"). Whereas

health risks associated with direct oral suction – which is heavily supported by the medical literature and leading medical specialists, thus satisfying the compelling state interest – such a compelling state interest need not be based on absolute certainties to be deemed compelling, and survive strict scrutiny review.  See Planned Parenthood v. Rounds, 636 F.3d 839, 897-99 (8th Cir. 2012)(holding statute requiring doctors performing abortions to report a causal link between abortion and suicide, was not unconstitutionally misleading or irrelevant because of some degree of "medical and scientific uncertainty" in the observed correlation between abortion and suicide). Indeed, in Rounds, the Court shifted the burden to plaintiffs to show that "any 'medical and scientific uncertainty' has been resolved into a certainty *against* a causal role for abortion." Rounds, 686 F.3d at 900.[12]  Thus, absolute certainty is not required for a government to establish its compelling state interest.

Plaintiffs' argument that the consent requirement is "underinclusive" fails.  Pl. Mem. at 26.  Plaintiffs' argument that DOHMH's failure to promulgate rules directed at "riskier contacts between infants and *symptomatic* individuals"[13] highlights the consent requirement is underinclusive in addressing HSV-1 infection in neonates, is untenable.  Id.  First, plaintiffs offer no real examples of such conduct with known risks for the transmission of HSV that could be

---

plaintiffs have only produced one physician to state that the risks attendant with direct oral suction are inconclusive, DOHMH's conclusions are supported by the medical community in the United States and abroad, experts in infectious disease and herpes at major academic institutions, and the like.  See Farley Dec., ¶ 67, Exhibit "K"; Goldberg-Cahn Dec., ¶¶ 18-19, Exhibit "E."

[12] In Fowler v. Missouri Dep't of Corrections, 534 F.3d 931, 939 (8th Cir. 2008), the court applied strict scrutiny in a challenge of a policy prohibiting a sweat lodge in a corrections facility for a Native American prisoner who was required to use the sweat lodge during his life sentence in order to practice his faith.  The court found that the compelling state interest requirement was satisfied with prison officials citing to the mere potential for a security problem in providing the sweat lodge, and that the officials did not need absolute certainty, proof, or experience that the sweat lodge would pose a security risk.  Fowler, 534 F.3d at 939.

[13] As set forth above and in the accompanying Farley Dec., it is well-established in the medical community that persons may transmit the herpes virus even when they are not exhibiting symptoms.  Thus, whether an adult who is a carrier of the herpes antibodies is symptomatic or not, is of no moment.  See Kimberlin Aff., ¶ 4; Stanberry Aff., ¶ 8; Zenilman Aff., ¶ 11, Wald Aff., ¶ 5; Farley Dec., ¶ 8, Exhibit "A."

regulated by DOHMH.  Plaintiffs' argument that DOHMH should consider regulating pacifier sharing among children in the event that one child has shed herpes virus onto a pacifier and shared it with another child who happens to have an open wound on his mouth, based on their unsubstantiated speculation that such was the case with one of the infants that contracted HSV-1 in the genitals where DOHMH concluded such was associated with direct oral suction, is grasping at straws.  See Zenilman Aff., ¶ 33, Farley Dec., ¶ 45.  Even if plaintiffs could establish that the sharing of a pacifier led to the highly improbable HSV-1 infection in one infant's genitalia, DOHMH's requirement that consent be given prior to direct oral suction on the open wound of an infant's penis so parents are aware that the conduct is to occur as well as the attendant risks, is by no means underinclusive.[14]

### (2)   The Consent Requirement is Narrowly Tailored to Protect Public Health

The consent requirement is narrowly tailored to advance the City's compelling government interest to protect public health and prevent infant morbidity.  See Citizens United, 558 U.S. at 310.  The narrowly tailored test differs from the "least restrictive means" test set forth by some courts.  Courts cannot require "governments to do the impossible – refuse each and every conceivable alterative regulation schedule."  U.S. v. Wilgus, 638 F.3d 1274, 1289 (10th Cir. 2011).  To do so would mean that strict scrutiny of laws would be "'strict in theory, but fatal in fact.'"  Id. (quoting Fullilove v. Klutznick, 448 U.S. 507, 518 (1980)).  To the extent that Health Code § 181.21 leads one parent to determine that direct oral suction should not be performed on their child, and prevents just one infant from contracting HSV and potentially dying, the consent requirement is narrowly tailored to advance the City's vital interest.

---

[14] Even if plaintiff could offer such examples of other regulatable activities that DOHMH might reasonably warn against, there is no requirement that government regulations address every possible source of a risk simultaneously when seeking to combat an established risk to public health.  It is reasonable and consistent for DOHMH to regulate piecemeal to combat a known health problem.  See FCC v. Beach Comm., Inc., 508 U.S. 307, 316 (1993).

Prior to enacting Health Code § 181.21, DOHMH attempted several other avenues of disseminating the conclusion that direct oral suction may lead to neonatal HSV-1 infection.   For example, DOHMH engaged in extensive public education and outreach campaigns in 2005-06, and again in 2012. See Farley Dec., ¶¶ 69-91; Exhibits "P"-"X."  This included numerous and extensive meetings with religious community leaders, posting information about the risks of direct oral suction on DOHMH's website, issuing an "Open Letter" warning of the dangers of direct oral suction during circumcision on DOHMH's website, and distributing literature to City hospitals for distribution with parental discharge papers. Id. at ¶¶ 77-81, Exhibits "R"-"T."   While those public education and outreach campaigns proved successful in part, new cases of HSV-1 infection associated with direct oral suction continue to occur, including the death of another infant last year.  Id. at ¶¶ 90-96.  DOHMH reasonably concluded that public education and outreach is insufficient to protect the public health and prevent against infant morbidity.

Moreover, the parents in two of the 11 reported cases of HSV-1 infection with causal links to direct oral suction reported that they were unaware beforehand that direct oral suction would be performed on their infants during circumcision (Farley Dec., ¶¶ 95-96), and DOHMH regularly receives complaints from parents of infants who had circumcisions that included direct oral suction but had no idea that the procedure would occur. Id., ¶ 96.  Thus, DOHMH has concluded that parents should be apprised of the risks associated with direct oral suction and consent to the practice prior to it occurring on their infant children.  The consent requirement is narrowly tailored to advance the compelling state interest of protecting the public health and ensuring that parents are aware direct oral suction will occur and the risks involved, before their children are circumcised and exposed to the risk of infection.

**C.   Health Code § 181.21 Survives Review Under N.Y. Constitution Free Exercise Clause**

Plaintiffs argue that Health Code § 181.21 does not survive review under art. I, §

3 of the N.Y. State Constitution.  See Complaint, ¶¶ 59-64; Pl. Mem. at 27-30.  However, even

under the "balancing test" articulated by the N.Y. Court of Appeals in Catholic Charities of the

Diocese of Albany v. Serio, 7 N.Y.3d 510, 525 (2006), in cases where a law "imposes 'an

incidental burden on the right to free exercise of religion,'" the court "must consider the interest

advanced by the legislation that imposes the burden, and '[t]he respective interests must be

balanced to determine whether the incidental burdening is justified.'"  Serio, 7 N.Y.3d at 525.  In

Serio, the Court enunciated that it would give "substantial deference" to the judgments of the

legislature even when the result burdens the exercise of religion, and that "the party claiming an

exemption bears the burden of showing that the challenged legislation, as applied to that party, is

an unreasonable interference with religious freedom."  Id. at 525.  Thus, substantial deference is

owed to DOHMH's finding that direct oral suction has dire health consequences.

Plaintiffs here, like those in Serio, have not met their burden of establishing that

the challenged rule unreasonably interferes with their religious freedom.  Serio, 7 N.Y.3d at 528;

see also St. Joseph Hosp. of Cheektowaga v. Novello 43 A.D.3d 139, 147 (4th Dep't

2007)(finding plaintiffs failed to meet burden of demonstrating "an unreasonable interference

with religion" in law closing Catholic hospitals).   Indeed, nothing in the rule prohibits the

plaintiffs from continuing to perform direct oral suction.  Contrary to plaintiffs' assertions, the

presentation of the required consent form does not compel the circumciser to undermine his own

religious beliefs.  Pl. Mem. at 30.  The rule does not prevent circumcisers from saying that they

do not believe there are any health risks[15] or that they disapprove of DOHMH's conclusions.

---

[15]  Although plaintiffs argue that they do not believe direct oral suction bears any health threat to infants, it is
noteworthy that the three individual plaintiffs assert that they take prophylactic measures prior to direct oral suction,

Plaintiffs' argument that the consent requirement would not serve any government interest because those in the "Hasidic and Orthodox communities" will not be dissuaded from allowing direct oral suction during circumcision, does not establish that the rule will not advance the government's interest. See Pl. Mem. at 29. First, plaintiffs cannot assume that all individuals in those communities would continue to allow direct oral suction once they are made aware of the health risks. Second, complaints to DOHMH have come from non-Hasidic parents who would clearly refuse direct oral suction if they had been informed in advance that it would occur. Even if plaintiffs could speak for all members of all religious Jewish sects, the fact remains that non-Hasidic, non-Orthodox Jews (and perhaps Orthodox Jews) may be dissuaded from allowing direct oral suction during their child's circumcision. This was, in part, the goal that the regulation was designed to achieve. Because DOHMH has received reports from parents complaining that direct oral suction occurred during their baby's circumcision without their knowledge or consent, the consent requirement advances the interest of informing people who would elect not to allow it to occur given the associated health risks.

Plaintiffs' reliance on the recent decision from the Court of Appeals for the Second Circuit in Fortress Bible Church v. Feiner, 694 F.3d 208 (2d Cir. 2012), as an example of the application of the New York balancing test, is misplaced. Pl Mem. at 28. There, the Second Circuit overturned the town's zoning determination because the record established the determination was "motivated solely by hostility toward the Church," thus, "there was no rational basis for the town's actions." Fortress Bible, 694 F.3d at 208.[16] Here, as set forth above,

---

and will indeed refrain from performing direct oral suction if they have any herpetic symptoms such as cold sores, to minimize the risk of any viral transmission. Heber Aff., ¶ 7; Blum Aff., ¶ 5; Leiman Aff., ¶ 5; Eichenstein Aff., ¶ 5.

[16] Indeed, Fortress Bible reiterated the Second Circuit's holdings that laws that are neutral and of general applicability are subject to rational basis review, whereas "[G]overnment actions that 'substantially burden the exercise of sincerely held religious beliefs' [are prohibited] unless those actions are narrowly tailored to advance a

hostility towards religion was not a factor.  Thus, Health Code § 181.21 passes muster under the New York State Constitution's Free Exercise clause.

**POINT II**

**THE REGULATION DOES NOT VIOLATE THE FREE SPEECH CLAUSE OF THE FIRST AMENDMENT**

**A.      Health Code § 181.21 Does Not Unconstitutionally Compel Speech**

Plaintiffs' contention that Health Code § 181.21 impermissibly compels speech in violation of the First Amendment is not likely to succeed on the merits.  The First Amendment "includes both the right to speak freely and the right to refrain from speaking at all."  Wooley v. Maynard, 430 U.S. 705, 714 (1977).  Plaintiffs argue that Health Code § 181.21 violates their First Amendment right to refrain from speaking by forcing them to utter speech "that they would not otherwise make."  Complaint, ¶ 39.  Plaintiffs, therefore, assert that Health Code § 181.21 is subject to strict scrutiny review and should be controlled by the "true compelled-speech cases" – such as Wooley v. Maynard, 430 U.S. 705 (1977), and West Virginia Bd. of Educ. v. Barnette, 319 U.S. 624 (1943).  See Pl. Mem. at 6.  In such cases, "an individual is obliged personally to express a message he disagrees with, imposed by the government[.]"  Johanns v. Livestock Mkt'ing Ass'n, 544 U.S. 550, 553 (2005).  However, unlike the true compelled-speech cases, Health Code § 181.21 does not unconstitutionally compel speech by requiring individuals to personally adopt a philosophy or foster an ideological point of view.

The First Amendment generally forbids "compelled speech" – i.e., laws that require individuals to speak in opposition to their deeply held beliefs and to adopt a point of view

---

compelling government interest."  Fortress Bible, 694 F.3d at 208 (quoting Fifth Ave. Presbyterian Church v. City of New York, 293 F.3d 570, 574 (2d Cir. 2002)).  See Columb v. Roman Catholic Diocese of Burlington Vt., Inc., 10 Cv. 245, 2012 U.S. Dist. LEXIS 140190, *16 (2d Cir. Sept. 28, 2012).

they find morally objectionable.  Wooley, 430 U.S. at 714.  In Barnette, 319 U.S. at 633, the Court held that a compulsory flag salute and pledge violated the First Amendment by forcing students to utter and affirm acceptance of political ideas represented by the flag.  In Wooley, the plaintiff objected to displaying on his license plate the ideological state motto, "Live Free or Die," and, therefore, covered the motto with tape.  Wooley, 430 U.S. at 707-08.  The Wooley plaintiff, who was subsequently charged with and convicted of a misdemeanor for "knowingly [obscuring] . . . the figures or letters on any number plate[,]" challenged the statute that made his conduct a criminal offense.  Id. at 707.  In finding the law unconstitutional, the Court noted that the First Amendment protected plaintiff's right to refuse to participate in the dissemination of the State's "ideological message" displayed upon his license plate.  Id. at 713.

Here, the disclosure required by Health Code § 181.21, which serves the compelling interest of protecting the health of infants, is a far cry from the unconstitutionally mandated speech at issue in Barnette and Wooley.  Unlike the laws challenged in Barnette and Wooley, Health Code § 181.21 does not compel a private speaker to personally adopt an "ideology" or a "political idea."  Indeed, DOHMH's purely factual disclosure does not involve the "dissemination of an ideological message," such as New Hampshire's state motto, and it does not involve the forced adoption of political ideas, such as the flag salute and pledge.  Rather, the required disclosure is purely factual in nature and, as detailed above, entirely substantiated by DOHMH's medical findings.  The consent requirement is intended to save the lives of infants by educating parents as to the risks associated with direct oral suction.  See Health Code § 181.21, Statement of Basis and Purpose.  The statement required by Health Code § 181.21 is thus not the equivalent of a government-mandated motto or pledge that the individual must endorse.

Moreover, Health Code § 181.21 does not require a private individual to endorse or adopt the City's warning about direct oral suction.  Health Code § 181.21 merely requires that the individual performing the circumcision include the City's message on a consent form (that the circumciser need not sign or otherwise adopt).  Nothing in Health Code § 181.21 prevents the circumciser from including additional language on the consent form to express his personal objections to the City's statement.  The circumciser may dispute the propriety of the City's medical findings, convey his belief that direct oral suction is religiously necessary, and even underscore the notion that the circumciser has included the City's message on the consent form only because he is legally required to do so.  Health Code § 181.21 does not restrict what the circumciser may wish to say (either in writing on the consent form or orally at the time of the signing) regarding the link between direct oral suction and the transmission of herpes simplex virus.  Thus, unlike the challenged statute in Wooley, which criminalized plaintiff's attempt to disavow the government's message, Health Code § 181.21 does not prevent the circumciser from openly disagreeing with the City's warning.

In Rumsfeld v. FAIR, 547 U.S. 47 (2006), the latest word from the Supreme Court on compelled speech, the Forum for Academic and Institutional Rights ("FAIR"), an association of law schools and faculties, who oppose discrimination based on sexual orientation, sought to restrict military recruiting on their campuses based on their objections to the government's prior policy on homosexuals in the military.  Rumsfeld, 547 U.S. at 47.  FAIR argued that the Solomon Amendment, which withholds federal funding from educational institutions that deny military recruiters the same access to their campuses as that provided to other recruiters, unconstitutionally compelled speech by forcing them to choose between enforcing their nondiscrimination policies and continuing to receive funds.  Id. at 55.

Concluding that the Solomon Amendment did not unconstitutionally compel speech, the Court found that it "neither limits what the law schools may say nor requires them to say anything." Id. at 60.  The Court noted that the Solomon Amendment regulates "conduct, not speech" because it "affects what the law schools must do – afford equal access to military recruiters – not what they may or may not say." Id.  The Court found that the law school's "accommodation of a military recruiter's message is not compelled speech because the accommodation does not sufficiently interfere with any message of the school." Id. at 65.  To that end, the Court noted that students and faculty are "free to associate to voice their disapproval of the military's message" and that "nothing in the Solomon Amendment restricts what the law schools may say about the military's policies." Id. at 50, 65.

Here, like the Solomon Amendment, Health Code § 181.21 regulates conduct – not speech – because it neither limits what the speaker may say nor requires him to say anything. Just as a circumciser may disavow the City's message under Health Code § 181.21, a circumciser may choose to remain silent and merely deliver the written consent form to the parent or legal guardian prior to the circumcision. Health Code § 181.21 in no way requires the circumciser to sign the form or engage in any conversation at the time the parent signs the form. Under Health Code § 181.21, the circumciser may use a standard form prepared and approved by DOHMH. In this regard, Health Code § 181.21 regulates the circumciser's conduct because it affects what a circumciser must do – i.e., physically hand the consent form to the parent – and not what the circumciser must say. Just as a law school does not speak when it hosts interviews and recruiting receptions for the military, a circumciser does not speak when he physically hands a parent a piece of paper, even if that paper contains the City's factual warning. To the extent plaintiffs argue that Health Code § 181.21 impermissibly requires the circumciser to

accommodate the City's message by distributing the consent form bearing the City's warning, this argument was expressly rejected by the Court in <u>Rumsfeld</u>. The Court emphasized that nothing about recruiting suggests that the law schools agree with the military recruiters' speech because the Solomon Amendment did not restrict what the law schools may say about the military's policies. Similarly, the act of distributing a consent form to a parent does not suggest that the circumciser agrees with the message conveyed by the City on the consent form. <u>Strickland v. City of Seattle</u>, 2009 U.S. Dist. LEXIS 81787 (W.D. Wa. Sept. 9, 2009), at *14 ("simply delivering a government regulated document. . . does not imply association with its contents."). In fact, the circumciser may explicitly disagree. Accordingly, as in <u>Rumsfeld</u>, Health Code § 181.21 does not unconstitutionally compel speech.

**B.    The Required Disclosure on the Consent Form Constitutes Government Speech**

Plaintiffs refer to the required disclosure as "government-sanctioned speech" and as DOHMH's "message," "statement," and "advice." Complaint, ¶¶ 2-3, 38-39, 62-63. Nonetheless, plaintiffs disregard the separate and distinct constitutional analysis concerning "government speech," and instead insist that strict scrutiny applies here under the "compelled speech cases." Here, unlike in the "true compelled-speech cases," no individual's speech is compelled because the speaker is the government and, as detailed above, the private individual is free to disavow DOHMH's message. Accordingly, pursuant to the government speech doctrine, which has been recognized by the Supreme Court, the Free Speech Clause is inapplicable herein, and Health Code §181.21 is not subject to any First Amendment scrutiny.

It is well-settled that the First Amendment does not prevent the government from engaging in its own expressive conduct. <u>See</u> <u>Pleasant Grove City, Utah v. Summum</u>, 555 U.S. 460 (2009). "The Free Speech Clause restricts government regulation of private speech; it does not regulate government speech." <u>Id.</u>; <u>Johanns</u>, 544 U.S. at 553 (government speech "is exempt

from First Amendment scrutiny"). "[W]hen the government is the speaker, it may choose what to say and what *not* to say; it need not be neutral." Choose Life Illinois, Inc. v. White, 547 F.3d 853, 859 (7th Cir. 2008). The government's advocacy is accorded such constitutional latitude because it remains accountable to its citizens through the electoral process. See Pleasant Grove, 555 U.S. at 468; see also R.J. Reynolds Tobacco Co. v. Shewry, 423 F.3d 906, 918 (9th Cir. 2005); Choose Life Illinois, 547 F.3d at 859. The government speech doctrine applies whether the government's message is delivered through private entities or directly by the government itself. Pleasant Grove, 555 U.S. 460; Rosenberger v. Rector & Visitors of the Univ. of Va., 515 U.S. 819, 833 (1995) (a government entity may "regulate the content of what is or is not expressed . . . when it enlists private entities to convey its own message").

In Pleasant Grove, the Court held that when a City denied a request by a private organization to showcase a donated monument in a public park that contained other privately donated monuments, it did not violate plaintiff's First Amendment rights because monuments in a public park constitute government speech. Pleasant Grove, 555 U.S. 460. The Court found that the City "effectively controlled' the messages sent by the monuments. Id. at 460 (quoting Johanns, 544 U.S. 550 at 560-61). In his concurrence, Justice Souter proposed the following test for determining whether speech is government speech or private speech: "[T]he best approach . . . is to ask whether a reasonable and fully informed observer would understand the expression to be government speech. . . ." Id. at 460. In Johanns, a collection of beef producers challenged a federal statute requiring them to pay assessments that were used to finance an advertising campaign for certain beef products that the beef producers did not wish to endorse. The Johanns Court concluded that the advertising campaign was government speech and, thus, not susceptible to a First Amendment challenge because the government established the overall message from

"beginning to end" and exercised "final approval authority over every word used in every promotional campaign." Id. at 560-61.  The Court noted an additional consideration: whether the message requires attribution to a private actor.  Id. at 564-65.

In light of the factors considered by the Court in Pleasant Grove and Johanns, it is apparent that the disclosure in Health Code § 181.21 is government speech.  A reasonable observer would readily understand the message on the consent form to be government speech because the disclosure expressly identifies DOHMH as the speaker.  Health Code § 181.21(b).  Additionally, like the government in Johanns and Pleasant Grove, here the City established the overall message to be communicated to the parent of the infant being circumcised.  It is evident from the face of Health Code § 181.21 that DOHMH exercised final approval over every word that must be disclosed on the form (either DOHMH's form, or one created by the circumciser with the required language) and directly controlled all aspects of the required disclosure.

In Strickland, 2009 U.S. Dist. LEXIS 81787, a similar degree of control exercised by the government led the Court to reject the plaintiff's First Amendment claim that he was compelled to disseminate the city's message.  In that case, the city required the owner of a marine works to develop a best management practices plan for marina tenants, and plaintiff disagreed with the city over the contents of the plan.  The Court rejected plaintiff's reliance on compelled speech cases and applied the Johanns factors.  The Court held that the best management practices plan constituted government speech and was not subject to the First Amendment because "every word of the . . . plan had to be approved by the City . . . [and] the government had complete control over its contents." Id. at *11-12.

Here, as in Johanns, a reasonable observer would attribute the statement on the form to the government and not to a private actor.  See Johanns, 544 U.S. at 564-65.  Indeed,

Health Code § 181.21 makes clear that the message regarding the conclusion that direct oral suction may lead to the transmission of HSV is the City's.  Health Code § 181.21 does not require a private individual to endorse or adopt the City's message.  See Strickland, 2009 U.S. Dist. LEXIS 81787, at *14 ("[T]here is no evidence that Strickland could not have dispelled any notion that he might be associated with the [c]ity's … plan, perhaps by including a statement in the plan that its contents were subject to the [c]ity's approval and regulations.").  Accordingly, the DOHMH's warning message on the consent form cannot be attributed to the individual performing the circumcision.  As the required disclosure simply conveys DOHMH's own message and does not compel any private speech, there is no First Amendment problem.

**C.    Health Code § 181.21 is Constitutional Under the Professional Speech Doctrine Because it Requires the Disclosure of Truthful, Non-Misleading Information**

Even assuming, arguendo, that the government speech doctrine is inapplicable, plaintiffs are incorrect that Health Code § 181.21 is subject to strict scrutiny.  Rather, this Court should apply the relaxed standard of review applied to laws involving the regulation of professional speech.[17]  It is well-settled that the government has broad authority to regulate those who perform medical procedures by requiring them to disclose "truthful, nonmisleading information" relevant to the patient's decision to have an abortion or any medical procedure. Planned Parenthood of Southeastern Pa. v. Casey, 505 U.S. 833, 882-84 (1992).  Although such informed consent statutes implicate a physician's right not to speak, they do so "only as part of the practice of medicine, subject to reasonable licensing and regulation by the State[,]" and, thus, are not subject to strict scrutiny.  Casey, 505 U.S. at 882-84 (1992) (upholding statute requiring

---

[17] While the compelled speech cases relied upon by plaintiffs, such as Wooley and Barnette, forbid the government from compelling individuals to speak, adopt, or disseminate ideological and political messages contrary to their own, those cases do not involve issues of consent, such as Health Code § 181.21, that require the disclosure of purely factual, non-misleading, and medically substantiated information about the health risks associated with a medical procedure.

that physicians performing abortions make disclosures regarding the procedure); Tex. Med. Providers Performing Abortion Servs. v. Lakey, 667 F.3d 570 (5th Cir. 2012) (upholding informed consent statute over compelled speech challenge); Rounds, 530 F.3d at 726 (upholding statute requiring certain pre-abortion disclosures); see Gonzalez v. Carhart, 550 U.S. 124 (2007).

Here, as in the above cases, DOHMH's warning message is truthful, non-misleading, and medically substantiated.[18]  In addition, it is axiomatic that the risk of exposing an infant to HSV is entirely "relevant" to a parent's decision regarding whether to subject an infant to direct oral suction as part of a circumcision.  Although ritual circumcisers, unlike physicians, are exempt from licensing in New York (see N.Y. Public Educ. Law § 6527(4)(b)), they nonetheless perform a medical procedure (albeit as part of a religious ritual) that exposes an infant to the risk of contracting an incurable and potentially fatal disease from the infected saliva of a person performing a circumcision.  It would be a perverse result for ritual circumcisers to have a freer hand in endangering an infant's life than licensed physicians merely because they are exempt from licensing requirements.

Regardless, ritual circumcisers cannot bootstrap their licensure exemption into an exemption from a consent statute that serves to protect newborn babies from contracting a

---

[18]  To the extent that plaintiffs take issue with the factual, truthful, and non-misleading nature of the required disclosure, plaintiffs are wrong.  Indeed, it is truthful that DOHMH advises against direct oral suction because it exposes babies to the risk of transmission of HSV.  Moreover, contrary to plaintiffs' contention, the link between direct oral suction and an infant's transmission of herpes is well-settled.  See Whitley Aff., ¶¶ 5, 9, 14-15, 18-19; Kimberlin Aff., ¶¶ 3, 8; Stanberry Aff., ¶ 7; Zenilman Aff., ¶¶ 19-29, 37-38; Wald Aff., ¶¶ 20-21; Farley Dec., ¶¶ 18-41.  Regardless, plaintiffs' challenge to DOHMH's warning on the grounds that "a causal link between MBP and the herpes virus ... has never been proved" is of no moment.  Pl. Mem., at 17.  The Supreme Court grants the government "wide discretion to pass legislation in areas where there is medical and scientific uncertainty," and "[m]edical uncertainty does not foreclose the exercise of legislative power in the abortion context any more than it does in other contexts."  Gonzalez, 550 U.S. at 164-64.  See also Rounds, 686 F.3d at 906 ("[T]he truthful disclosure regarding increased risk cannot be unconstitutionally misleading or irrelevant simply because of some degree of 'medical and scientific uncertainty,'... as to whether abortion plays a causal role in the observed correlation between abortion and suicide[.]").  As set forth above, DOHMH, a responsible medical body, has reasonably concluded that there is a risk that an infant subjected to direct oral suction will contract HSV.  Until DOHMH's determination can be conclusively disproved by a scientific study, there is no reason to believe that a risk does not exist.

potentially lethal virus.  Persons performing circumcisions must still do so safely and reasonably, and in a manner that is not inconsistent with the peace or safety of the state.  Zakhartchenko v. Weinberger, 159 Misc. 2d 411 (N.Y. Sup. Ct., Kings Co. 1993) ("A religious ritual, such as a circumcision, anciently practiced and reasonably conducted, is not subject to governmental restrictions so long as it is consistent with the peace or safety of this state[.]") (emphasis added).

In support of their claim that Health Code § 181.21 is subject to strict scrutiny review because the "professional speech doctrine cannot be applied[,]" plaintiffs rely on a line of cases involving municipal regulations requiring limited service pregnancy centers to disclose that they do not provide abortion services and do not have licensed medical professionals on staff. Pl. Mem. at 11.  In such cases, the Courts have applied strict scrutiny to the challenged regulation and found the professional speech doctrine inapplicable because the crisis pregnancy centers neither practice medicine nor employ licensed professionals.  See Evergreen Ass'n v. City of New York, 801 F. Supp. 2d 197, 205 (S.D.N.Y. 2011); Greater Balt. Ctr. for Pregnancy Concerns v. Mayor & City Council, 683 F.3d 539 (4th Cir. 2012).[19]

Here, unlike in the pregnancy center cases, the purpose of Health Code § 181.21 is to prevent newborns from contracting an incurable and potentially fatal disease.  It is not to prevent deceptive advertising practices related to reproductive health care.  In addition, unlike the laws at issue in the pregnancy cases, Health Code § 181.21 deals with a practice, which is at its core a surgical procedure.  Indeed, the performance of non-invasive obstetric ultrasounds is not the same kind of medical procedure as circumcision, which involves cutting skin, drawing blood, and, in the ritual here, direct oral contact with the infant's freshly circumcised penis.  The

---

[19] Defenda nts maintain that Evergreen and Greater Baltimore were wrongly decided.  Defendants' appeal in Evergreen is currently sub judice before the Second Circuit, and the Fourth Circuit's decision in Greater Baltimore is being reheard en banc.

exemption from licensing does not – and cannot – obviate the need for parental consent and the disclosure of truthful, non-misleading, and medically substantiated information regarding the grave health risks associated with direct oral suction. Accordingly, this Court should draw from the principles set forth in Casey and its progeny and uphold Health Code § 181.21 as a reasonable and modest regulation of a medical procedure that serves the overriding and compelling government interest of protecting the lives of infants.[20]

**D.     Health Code § 181.21 Satisfies Strict Scrutiny**

Although strict scrutiny is not the proper standard of review to apply here, Health Code § 181.21 passes constitutional muster even under that exacting standard of review.

(1)     Compelling Government Interest

As detailed above, the City has satisfied its burden of demonstrating a compelling interest. In light of the well-documented public health concerns associated with the transmission of HSV-1 to infants through direct oral suction, DOHMH has certainly identified an "actual problem" in need of solving. See Point I(C)(1), supra. In order for DOHMH to establish a compelling interest, it need not demonstrate the link between direct oral suction and the transmission of HSV to a degree of absolute medical certainty. Moreover, DOHMH's medical conclusions regarding the causal link are entitled to deference. Grutter v. Bollinger, 539 U.S. 306 (2003); School Bd. of Nassau County, Fla. v. Arline, 480 U.S. 273, 288 (1987) ("[C]ourts

---

[20] Similarly, this Court should draw from the principles set forth in the line of cases that uphold government regulations compelling "purely factual and uncontroversial" disclosures by commercial actors so long as the mandated disclosure is "reasonably related to the State's interest in preventing deception of consumers." Zauderer v. Office of Disciplinary Counsel, 471 U.S. 626, 651 (1985); National Elec. Mfrs Ass'n v. Sorrell, 272 F.3d 104, 114 (2d Cir. 2001). To the extent that some ritual circumcisers accept payment or direct contributions towards a charity for their services, such is akin to a commercial transaction. Evergreen, 801 F. Supp. 2d at 205 ("[A] commercial transaction is an exchange undertaken for some commercial purpose[.]"). In any event, the notion that a law may compel the disclosure of factual and uncontroversial information in the commercial context in order to protect consumers should apply here, even if the circumciser does not accept payment for his services, because there is a grave public health risk that must be addressed. Accordingly, Health Code § 181.21 should be upheld so long as it is reasonably related to the government's interest in preventing babies from contracting HSV. Health Code § 181.21 easily satisfies this standard of review.

normally should defer to the reasonable medical judgments of public health officers."), superseded by statute on other grounds; Johnson v. California, 336 F.3d 1117 (9th Cir. 2003)("[S]trict scrutiny still allows for a measure of deference to government actors acting within their particular sphere of competence."); Turner Broad. Sys. v. FCC, 520 U.S. 180 (1997).

Plaintiffs' challenges regarding the scientific methodology supporting DOHMH's conclusion that direct oral suction leads to HSV are unsubstantiated and entirely without merit. See Point I(C)(1), supra. In addition, plaintiffs have not satisfied their burden of showing that any medical and scientific uncertainty has been resolved against the causal link, meaning that plaintiffs cannot demonstrate that there is no causal link between direct oral suction and the transmission of HSV to a degree of scientific certainty. See Rounds, 636 F.3d at 897-99.

(2)     Narrowly Tailored

The consent requirement is narrowly tailored to serve compelling governmental interests. A statute is narrowly tailored if it targets and eliminates no more than the exact source of the 'evil' it seeks to remedy. Frisby v. Schultz, 487 U.S. 474, 485 (1988). "Broad prophylactic rules in the area of free expression are suspect. Precision of regulation must be the touchstone[.]" NAACP v. Button, 371 U.S. 415, 438 (1963). Health Code § 181.21 advances the City's compelling interests. As detailed above, the purpose of Health Code § 181.21 is to educate parents as to the risks associated with direct oral suction. To the extent that Health Code § 181.21 leads just one parent to conclude that direct oral suction is not appropriate given the health risks, and prevents just one infant from contracting an incurable and potentially fatal disease, the consent requirement has advanced the City's stated interest.

In addition, Health Code § 181.21 is the least restrictive means of advancing the City's goal of educating parents as to the risks posed by direct oral suction. As detailed above,

DOHMH has attempted several alternatives to Health Code § 181.21 that did not involve speech. Thompson v. Western States Med. Ctr., 535 U.S. 357 (2002) ("If the First Amendment means anything it means that regulating speech must be a last – not first – resort"). Farley Dec., ¶¶ 69-96. In addition, DOHMH received calls from parents, complaining they were unaware direct oral suction was going to occur during their child's circumcision. Id. at ¶ 94. The consent requirement directly addresses these concerns by ensuring that parents know the circumciser will perform the practice as part of the circumcision, and are aware of the health risks associated with the practice.

Plaintiffs argue that Health Code § 181.21 is not narrowly tailored because DOHMH should disseminate the information regarding the risks of direct oral suction, and not require the person performing the circumcision to do so. Pl. Mem. at 9. Plaintiffs are wrong. DOHMH's prior attempts to publish and distribute literature proved largely unsuccessful. See Farley Dec., ¶¶ 77-96. In addition, the circumciser is uniquely capable of conveying the City's warning at the appropriate time. Circumcisions take place countless times a day in the homes of private individuals and in synagogues all over the City. DOHMH does not have the ability to convey its warning to the parents of every child being circumcised at the time it is occurring (or immediately before). Requiring the circumciser to pass along the City's warning ensures that every parent receives notice of the serious health risks associated with direct oral suction at the time when the decision to include direct oral suction as part of the circumcision becomes most relevant. Again, because Health Code § 181.21 does not ban direct oral suction or prohibit the circumciser from disavowing the City's message, it is the least restrictive means of educating parents of the health risks of direct oral to genital contact and, thus, saving the lives of babies.

## CONCLUSION

For the reasons set forth above, the Court should deny plaintiffs' motion for a preliminary injunction, together with such other and further relief as this Court deems just and proper.

Dated:     New York, New York
           November 15, 2012

                                  MICHAEL A. CARDOZO
                                  Corporation Counsel
                                    of the City of New York
                                  Attorney for Defendants
                                  100 Church Street, Rm. 5-171
                                  New York, New York 10007
                                  Email:  migoldbe@law.nyc.gov
                                  (212) 788-0758

                  By:                                    
                                  MICHELLE GOLDBERG-CAHN
                                  Assistant Corporation Counsel

GABRIEL TAUSSIG,
MICHELLE GOLDBERG-CAHN,
RACHEL K. MOSTON,
                Of Counsel.